# Sharpless Specialty Co. *v.* Wilson & Co. (et al., Garnishees), Appellant.

*Contract—Corporation—Similar names—Parties.*
1. In an action against a corporation for balance due on goods sold and delivered, where the defendant alleges that the goods were sold to two other subsidiary corporations of similar name to that of defendant and incorporated in other states, a verdict and judgment for plaintiff will be sustained where there is ample evidence to show that plaintiff had contracted with defendant through the latter's agent without knowledge of the existence of the subsidiary companies.

*Practice, C. P.—Pleadings—Set-off—Leave to amend.*
2. Where, at the trial of an action of assumpsit, plaintiff objects to an offer of set-off because it was not admissible under the pleadings, but states that if defendant desires to amend the pleadings there would be no objection, and defendant does not avail himself of such opportunity, he cannot afterwards complain that the set-off was not considered.

Argued January 21, 1924. Appeal, No. 145, Jan. T., 1924, by defendant, from judgment of C. P. No. 1, Phila. Co., March T., 1922, No. 436, on verdict for plaintiff, in case of Sharpless Specialty Co. v. Wilson & Co., defendant, and the Corn Exchange National Bank, the Girard

National Bank, the Philadelphia National Bank, and Franklin National Bank, Garnishees.  Before Mosch-zisker, C. J., Walling, Simpson, Kephart and Schaffer, JJ.  Affirmed.

Foreign attachment for balance claimed to be due upon two contracts for purchase of machinery.  Before McDevitt, J.

The opinion of the Supreme Court states the facts.

Verdict and judgment for plaintiff for $25,726.  Defendant appealed.

*Error assigned* was, inter alia, refusal of judgment for defendant n. o. v., quoting record.

*Frank Rogers Donahue,* with him *W. R. Brown,* for appellant.—The evidence was insufficient to bind defendant: Huling v. Hugg, 1 W. & S. 418; Pennell v. Grubb, 13 Pa. 552; Fleisher v. Blackburn, 15 Pa. Superior Ct. 289; Pollock v. Car Co., 230 Pa. 136; DeForrest v. Townsite Co., 241 Pa. 78; Twelfth Street Market Co. v. Jackson, 102 Pa. 269; McAllister v. Pittsburgh W. H. Co., 65 Pa. Superior Ct. 522.

*Frederic L. Ballard,* of *Ballard, Spahr, Andrews & Madeira,* for appellee.—There was sufficient competent and uncontradicted evidence to support a finding that defendant made the contracts.

The technical misnomer of defendant corporation was not pleaded below and is not available as a ground for reversal on this appeal: Berks & Dauphin Turnpike Road v. Myers, 6 S. & R. 12; Gray v. Nav. Co., 2 W. & S. 156; Clarke v. Potter Co., 1 Pa. 159; Ulysses Elgin Butter Co. v. Ins. Co., 20 Pa. Superior Ct. 384.

Opinion by Mr. Justice Schaffer, March 3, 1924:

This action was begun by foreign attachment, the writ issued against Wilson & Company.  Funds belonging to

Wilson & Co., Inc., a corporation of the State of New York, were attached. On the trial, it developed that there was no such corporate entity as "Wilson & Company" but that this was the trade name under which a combination of corporations, including Wilson & Co., Inc., the parent corporation chartered under the laws of New York, carried on business; letterheads and the sign on the office door at the main office in Chicago, which was the registered office of the New York corporation, being thus inscribed. Subsidiary to the New York corporation were forty or fifty others, all of which aggregated together carried on a nation-wide business as packers and dealers in packers' products. The only two of the subsidiaries necessary to be mentioned here are Wilson & Co., Inc., of Tennessee, and Wilson & Co., Inc., of Oklahoma.

Appearance was entered for Wilson & Company and, after the trial commenced, for Wilson & Co., Inc., of New York, which filed an affidavit of defense during the trial. The record was amended without objection from appellant by changing the name of defendant to Wilson & Co., Inc., of New York, wherever it appeared.

Plaintiff was a manufacturer of machinery and sold certain machines to "Wilson & Company" under contracts in writing so signed by the purchasing agent of Wilson & Co., Inc., of New York, C. H. Dinger, who was also the purchasing agent for Wilson & Co., Inc., of Tennessee, and Wilson & Co., Inc., of Oklahoma. The contention of plaintiff is the contracts were made with the parent company, Wilson & Co., Inc., of New York, whereas that company, against which the verdict that brought about this appeal was rendered, avers the contracts were with the Tennessee and Oklahoma corporations, and that it is in no way liable thereon. They were negotiated in Chicago in the office of the New York company, where it was authorized to do business. The Tennessee and Oklahoma corporations were not registered to do business in the State of Illinois.

The circumstances connected with the making of the contracts were these: Miller, vice-president of plaintiff, called at the office of the New York company in Chicago and there met Lowenstein, vice-president of the latter, who had no official connection with the Tennessee or Oklahoma companies. They discussed the installation of plaintiff's machines, and, after at least two interviews, and an inspection of certain of them in operation by a representative of Lowenstein's, the latter introduced Miller to Dinger, the purchasing agent, with whom the formal contracts of purchase were subsequently made. They were signed in one instance "Wilson & Company by C. E. Dinger" and in the other "Wilson & Co. by C. E. Dinger." Neither during the negotiations, nor at the time of signing the contracts, was it stated by either Lowenstein or Dinger that any other than the parent company, Wilson & Co., Inc., of New York, was purchasing the machinery. Dinger testified he made the contracts for the two subsidiary concerns. The agreements provided that the machines were to be shipped to a Chattanooga refinery, which the testimony shows was owned by the Tennessee company, and to one in Oklahoma City owned by the Oklahoma company. They were accepted and used and payment was made of about half the agreed-upon price. Failure to pay the balance led to this proceeding. On its books, plaintiff in two separate accounts charged the price of the machinery to Wilson & Company, Chattanooga, and Wilson & Company, Oklahoma City. It is argued by appellee, and we think the contention can fairly arise from the entries as they were made, that the naming of the cities in the ledger only indicated the plants to which deliveries were made, as the complete entry is "Name—Wilson & Company, Address —Oklahoma City, Oklahoma." There is a similar notation as to Chattanooga. It appeared plaintiff in letters addressed to Wilson & Company at Chattanooga and Oklahoma City made demand for payment and that it received a check for $20,000, on account, from Wilson &

Co., Inc., of Tennessee, representing a payment for the machinery in the Chattanooga plant. To meet any interferences to be drawn from these circumstances, plaintiff produced a letter from the Chicago office signed "Wilson & Co." in which it is stated, "We are advised that you are pressing *our people* at Chattanooga for payment also that you have written to *our* treasurer in Chicago." A similar letter with like language referred to "our people at Oklahoma City." In neither communication was there any repudiation of liability by the parent company or hint that the Tennessee and Oklahoma companies were liable. It is also urged by appellee that these communications show the parent company controlled payment.

The contracts were in the form of proposals and acceptances, in one instance, "Proposal to Wilson & Co. for Chattanooga Refinery," and in the other "Proposal to Wilson & Company for the Oklahoma City Refinery." Lowenstein, writing from Chicago to plaintiff shortly after the making of the first contract, under the letterhead "Wilson & Co." said *"We* will go ahead on the original basis at Chattanooga on the direct purchase which *we* made when you were here recently. A little later on *we* may consider installing machines......at Oklahoma. Want to thank you for......giving *us* an opportunity to consider it." This letter was signed "Wilson & Co., A. Lowenstein." Dinger testified that after the contracts were executed he mailed them to the Tennessee and Oklahoma plants: "To each individual plant—the contract with the requisition form that we have, *authorizing* the payment by that individual company." Plaintiff urges this shows the contracts were made by the parent company, that unless so made there was no occasion for the authorization of payment by the others. In another letter written to plaintiff from the Chicago office on the same letterhead and signed "Wilson & Co." relative to the shipment by plaintiff of repair parts it was stated, "We will not offset any charges for

these repair parts with other claims which *we* may have against you in connection with the separator shipped to Oklahoma City." It is argued this was a recognition by defendant of the fact that the contract had been made with it. The court below held that under the evidence the question whether the contracts had been made with defendant was for the jury.

It is claimed by appellant that it was deprived of a substantial defense by way of set-off arising out of the failure of plaintiff to deliver the machinery in accordance with the contracts, and by reason of the commodity manufactured not coming up to the requirement of the agreements, that it could not make this defense, of failure to comply with the contracts, available to the Tennessee and Oklahoma companies, because it could not prove ownership of the set-off at the inception of the suit, citing Huling v. Hugg, 1 W. & S. 418; Pennell v. Grubb, 13 Pa. 552; Fleisher v. Blackburn, 15 Pa. Superior Ct. 289. We think appellant cannot complain of this, for the reason that, in the course of the trial, when a question was put by defendant's counsel to plaintiff's vice-president inquiring whether he did not know that the real buyers of the machinery had presented to his company a counterclaim of $30,000, it was objected by plaintiff's counsel that the presentation of a counterclaim was inadmissible under the pleadings, but, in connection with the objection, it was stated that, if defendant's counsel desired to amend his pleadings, there would be no objection. Defendant's counsel did not avail himself of the opportunity offered to amend, but stood to his guns on the line of defense where he had planted them, that the New York company had not made the contract. Having refused the advantage of the position his antagonist tendered, which would have brought the set-off into action, he cannot now complain. We think plaintiff, having assumed the attitude that the parent company was responsible, would not be permitted to deny that a valid counterclaim should be made, if there was one.

The question here was one of fact,—Did appellant enter into the contracts?—whether it did, under the circumstances produced, was for the jury. Their determination we cannot set aside by entering judgment for defendant non obstante veredicto as it contends we should, because there was sufficient evidence to warrant the verdict.

Without further lengthening the opinion by a reference to every assignment of error brought to our attention, it is sufficient to say all of them have been considered and we find none which would warrant our interfering with the result brought about in the court below.

The assignments of error are all overruled and the judgment is affirmed.